## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Michael T. Legens,**

      **Plaintiff,**

**-V-**                                      **Case No. 2:2001cv00794**
                                                            **JUDGE SMITH**
                                                              **Magistrate Judge King**

**Nationwide Ins. Co., et al.,**

      **Defendants.**

### OPINION AND ORDER

Plaintiff asserts that defendants discriminated against him on the basis of his age when they refused to hire him for any of the numerous employment positions for which he applied, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and Ohio Rev. Code Chapter 4112.  On June 17, 2004, the Court issued an opinion and order granting in part and denying in part defendants' summary judgment motion.  As a result of that ruling, two of defendants' hiring decisions with respect to the following employment positions remain in contention: (1) Requisition No. A02-001003, Agency Support Director, and (2) Requisition No. A01-004313, Process Design Consultant.  Voir dire is set to begin on November 10, 2005, and opening arguments and presentation of evidence is set to begin on November 14, 2005.

Defendants have filed four motions *in limine.*  The purpose of allowing parties to move *in*

*limine* to exclude evidence is "to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial . . . ."  Black's Law Dictionary  914 (5th Ed. 1979).  Motions *in limine* also serve to streamline the trial by eliminating the need to interrupt the presentation of evidence with lengthy objections and sidebar conferences.

## I.  The Court's August 14, 2004 opinion and order

Nationwide first moves to preclude plaintiff from:

(1) offering evidence or argument in the presence of the jury that, in anticipation of or following his placement on 60-day unassigned status, Plaintiff, applied and was not selected for other positions with Nationwide from approximately November 1, 1999 through August 14, 2000, other than the two (2) positions designated as Requisition No. A02-001003, Agency Support Director, and Requisition No. A01-004313, Process Design Consultant; and

(2) offering evidence or argument in the presence of the jury seeking to refute other facts and legal issues conclusively determined by the Court in its Opinion and Order of June 17, 2004 ("Summary Judgment Order"), including, but not limited to:

(a) the determination that Plaintiff's evidence that Nationwide turned him down numerous times in favor of younger candidates does not support an inference of discriminatory animus and is not probative of age discrimination. (Summary Judgment Order at pp. 14-16, 37, 46);

(b) the determination that Brett Tupps' opinion that Plaintiff was "curt, abrupt, and/or abrasive" is age-neutral and does not support an inference of age-based discrimination. (Summary Judgment Order at pp. 19-21);

(c) the determination that Nationwide's alleged departure from its internal posting guideline and/or alleged interview guideline, to the extent any such interview guideline exists, in connection with some of the positions for which Plaintiff applied but was not hired, is age-neutral and does not give rise to an inference that Nationwide discriminated against Plaintiff because of his age. (Summary Judgment Order at pp. 24, 30);

(d) the determination that Nationwide's job postings were designed to state the minimal requirements for the job, not to list every conceivable basis upon which

2

one candidate might be preferred over another, and that any alleged failure by Nationwide to follow any guideline regarding posted qualifications does not demonstrate pretext as a matter of law. (Summary Judgment Order at pp. 33, 47); and

(e) the determination that any difference between the first explanation that Plaintiff received from a limited menu of nonselection codes used by Nationwide and the more complete explanation of the reasons for Plaintiff's non-selection with respect to any of the positions for which Plaintiff applied but was not hired, does not give rise to an inference of age discrimination. (Summary Judgment Order at pp. 39, 41, 47-48).

(Doc. 86) at 1-2.

Defendants argue that the Court should exclude the above evidence under Fed. R. Civ. P. 56(d), the law of the case doctrine, and Fed. R. Evid. 403. Rule 56(d) provides as follows:

**Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed. R. Civ. P. 56(d). Rule 56(d) empowers a court to issue an order specifying facts that appear without substantial controversy when it would be practicable to do so to save time and simplify the trial. See 10B Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2737, at 311-12 (3d ed. 1998). Here, the Court did not find that it would be practicable to make Rule 56(d) findings, and consequently did not attempt to specify facts that appear without substantial controversy in its June 14, 2004 opinion and order.

Defendants also argue that the subject evidence is precluded under the law of the case

doctrine.  Under the "law of the case" doctrine, a court should not reopen issues decided at an earlier point in the same litigation. <u>Agostini v. Felton</u>, 521 U.S. 203, 236 (1997). "Issues decided at an earlier stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." <u>Hanover Ins. Co. v. American Eng'g Co.</u>, 105 F.3d 306, 312 (6th Cir.1997) (citation omitted).

The doctrine of law of the case is applied rigidly to enforce a lower court's obedience to a higher court.  <u>United States v. Dunbar</u>, 357 F.3d 582, 592 (6th Cir. 2004).  The doctrine is more flexible when applied to a reconsideration of an earlier ruling by the same court.  <u>Id.</u>  "'At the trial court level, the doctrine of law of the case is little more than a management practice to permit a logical progression toward judgment.  Prejudgment orders remain interlocutory and can be reconsidered at any time.'" <u>Id.</u> at 592-93 (quoting <u>Gillig v. Advanced Cardiovascular Sys.</u>, 67 F.3d 586, 589 (6th Cir. 1995)(quoting 1b James Wm. Moore, *et al.,* <u>Moore's Federal Practice</u> ¶ 0.401 (2d ed. 1994))).

Defendants also refer to Fed. Rule Evid. 403.  Rule 403 provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  With these principles in mind, the Court will proceed to examine defendants' specific requests.

### A.  Other hiring decisions not at issue

In its June 14, 2004 opinion and order, the Court ruled that plaintiff's purported "pattern" evidence, consisting of defendants' numerous decisions to hire younger workers instead of

plaintiff, did not, as a matter of law, give rise to an inference of age discrimination.  Defendants

seek to enforce this ruling through the exclusion of evidence referring to other hiring decisions

that are no longer directly at issue in this case.

Plaintiff concedes that the other hiring decisions are not admissible to demonstrate age

discrimination.  Plaintiff, however, maintains that evidence of his pursuit of other positions at

Nationwide is admissible, with a suitable limiting instruction, to show that he made reasonable

efforts to mitigate his damages.  Plaintiff seeks to introduce evidence of the thirty-seven

positions for which he applied after he was turned down for Agency Support Director and

Process Design Consultant positions.  Such evidence would be used to rebut any evidence

offered by defendants that plaintiff failed to mitigate his damages.

Defendants respond with the following proposed stipulation:

> Nationwide agrees that Plaintiff made reasonable mitigation efforts during the
> time period from January 28, 2000 through August 14, 2000, when Plaintiff was
> still employed at Nationwide. Therefore, your consideration of the issue of
> Plaintiff's mitigation efforts shall begin with the efforts Plaintiff made subsequent
> to August 14, 2000.

Defendants argue that the proposed stipulation renders the evidence of the other hiring decisions

superfluous.

The Court disagrees.  First, plaintiff's efforts to find a replacement position during this

period were not merely reasonable; they were extraordinary.  More importantly, the evidence of

mitigation is not susceptible to being so neatly compartmentalized in this case.  Simply put,

when plaintiff was attempting to mitigate his damages while still employed by defendants, he

was attempting to mitigate his *future* losses, not merely losses through August 14, 2000.

Plaintiff's efforts to mitigate while still employed by defendants would be relevant at least to the

point in time when a comparable position became available and plaintiff failed to exercise reasonable diligence in pursuing it.   Determining such a point in time, if it exists, would necessarily entail evidence of job availability which is not yet a part of the record.  Moreover, plaintiff's efforts while he was still employed by Nationwide may be relevant to whether plaintiff exercised reasonable diligence at other times pursuant to Fed. R. Civ. P. 406.  The Court further finds that, with a limiting instruction, the probative value of such evidence will likely substantially outweigh any danger of unfair prejudice.  For these reasons, the Court holds that evidence of plaintiff's efforts to obtain other positions while still employed by defendants is admissible at trial to demonstrate that plaintiff mitigated his damages.  The Court, however, will not allow evidence of plaintiff's efforts to secure other positions to the extent that it includes reference to plaintiff's allegations of discrimination with respect to those positions.

## B.  Brett Tupps' opinion

Brett Tupps was the decision-maker with respect to the Agency Support Director position.  Tupps stated in part in his affidavit: "For approximately one year between 1988 and 1989, I worked with Mr. Legens in Columbus, Ohio where we both worked as Agency Office Automation Specialists.  Based upon my personal observation of Mr. Legens, I determined that he was often curt, abrupt and/or abrasive."  Tupps aff. ¶ 12.  In his memorandum in opposition, plaintiff argued that Tupps' comment was direct evidence of discriminatory animus.  Plaintiff contended that the "curt, abrupt and/or abrasive" charge was ageist stereotyping, and accused Tupps of playing the "curmudgeon card."

In its opinion and order of June 14, 2004, the Court rejected plaintiff's assertion that

Tupps' comment supported an inference of discriminatory animus.  Defendants now seek to preclude plaintiff from arguing at trial that Tupps' opinion is evidence of age discrimination.

The Court reaffirms its earlier ruling that Tupps' comment that he found plaintiff to be "curt, abrupt and/or abrasive" is not probative of discriminatory animus.  Significantly, the Court's earlier ruling is based upon an analysis under Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir.1994), which addressed admissibility of evidence.  The Court's prior ruling is clearly applicable to the issue of admissibility.  Plaintiff shall therefore refrain from arguing or suggesting that Tupps' comment is direct evidence of age discrimination.  Nonetheless, the jury may consider the subjective nature of Tupps' statement in determining pretext.

### C.  Internal guidelines for job posting and interviews

In his memorandum in opposition to defendants' summary judgment motion, plaintiff pointed out that defendants departed from an internal guideline when it filled certain positions before plaintiff applied for them.  In essence, the hiring managers already had in mind who would fill the positions before the positions were posted.  Plaintiff contended that the departure was circumstantial evidence of age discrimination.  The Court rejected plaintiff's argument:

> Gardner's testimony indicates that Nationwide departed from its guideline in making the hiring decision in one or more of the above hiring decisions.  This does not, however, alter the fact that if the younger candidate was hired before plaintiff applied for the position, the hiring could not possibly have been as a result of intentional age discrimination against plaintiff. Valent at * 5.  In addition, the failure to follow the guideline does not, on its face, disadvantage unsuccessful older applicants who applied for the position after it was filled any more than it would disadvantage unsuccessful younger applicants who did the same.  For these reasons, the Court finds that Nationwide's departure from its internal guideline in connection with one or more of the four positions referenced above does not give rise to an inference that Nationwide discriminated against plaintiff because of his age.

Opinion and Order at 24.  Plaintiff also argued that discriminatory animus could be inferred from defendants' failure to interview plaintiff for a position for which he was at least minimally qualified.  The Court likewise rejected this argument, stating:

> First, plaintiff has not introduced evidence that such a policy existed.  In addition, plaintiff has failed to demonstrate  that any departure from the guidelines was anything other than age-neutral.  That is, there is no evidence to suggest that Nationwide's alleged failure to adhere to its guidelines disadvantaged older candidates any more than it disadvantaged younger candidates.

Opinion and Order at 30.

Defendants now seek to exclude evidence or argument concerning any departures from these internal guidelines with respect to the Agency Support Director and Process Design Consultant positions.  Defendants argue that the Court's ruling on this issue was not position-specific, and therefore applies to all positions.

Plaintiff maintains that the rulings were limited to the specific positions the Court was considering.  Plaintiff also cites case law to the effect that departure from internal guidelines may give rise to an inference of discrimination.  See Stalka v. Fernald Environmental Restoration Mngt. Corp., 178 F.3d 414, 421 (6th Cir. 1999); Brennan v. GTE Governmental Sys. Corp., 150 F.3d 21, 29 (1st  Cir. 1998). In Stalka, one of the plaintiffs was the oldest member of his peer group and was laid off as part of a reduction in force despite being rated the most competent.  The plaintiff had been laid off in a restructuring in which the employer used employee skills as the basis for determining which jobs to eliminate.  The employer, however, made an exception in plaintiff's case.  The Sixth Circuit observed:

> In this case the jury could reasonably have concluded, as FERMCO would have had them do, that each RSO's job was unique, so that Skalka could not compare himself to the four other members of his peer group. However, this conclusion was not required, and again the jury may have been suspicious of the defendants'

insistence that their own system for planning the layoffs was inappropriate for Skalka. Skalka and the other RSOs had the same title and the same supervisor. FERMCO determined that their jobs required the same skills when it assigned them to a single peer group. To say that an exception was warranted because Skalka's particular assignment was unnecessary is not a very convincing argument in the context of a large-scale layoff. If a company decides to eliminate scores of employees, it must necessarily decide that some jobs are unnecessary. The company could have chosen to structure the layoffs by identifying the least necessary jobs and eliminating their incumbents, as the employer did in Barnes. FERMCO, however, chose to proceed on the basis of employee skills. The jury did not have to accept as credible its explanations of why it deviated from its own procedure in Skalka's case. Having concluded that FERMCO's reason for laying off Skalka was not worthy of belief and having heard evidence that FERMCO "lost" the peer group's ranking forms, deviated from its normal procedures, and fired the oldest and most qualified RSO, the jury was entitled to find that discrimination had occurred.

178 F.3d at 421-22.  Brennan also involved a reduction in force. In determining that the plaintiff would be laid off, the employer departed from its standard procedure by failing to take into account seniority.  The First Circuit held that evidence that the standard procedure was not followed was directly relevant to the plaintiff's burden of demonstrating pretext.  150 F.3d at 29.

Although mindful of Stalka's recognition that departures from standard procedures may give rise to an inference of pretext, the Court does not believe the decision stands for the proposition that every time an employer fails to dot an "i" or cross a "t", an inference of discriminatory animus arises.  Some departures from standard procedure, viewed in context, are so innocuous that they are not probative of pretext as a matter of law.

With respect to the job-posting guideline, the Court's earlier ruling is limited to those instances in which the hiring decision was made before plaintiff applied for the job.  In these cases, the inference of age discrimination could not arise from the deviation from the guideline because, at the time the hiring decision was made, the hiring manager could not have considered plaintiff's age because he had not yet applied for the position.  There has been no suggestion that either of the jobs at issue were filled before plaintiff applied for them.  It appears to the Court at this juncture that evidence of this particular policy would be irrelevant and therefore inadmissible.

The Court rejected plaintiff's argument, that Nationwide's departure from the alleged guideline that all qualified candidates should be interviewed is a basis for demonstrating pretext, primarily because plaintiff had not offered evidence that such a policy existed aside from plaintiff's own vague "understanding." As for the departure from the alleged policy, in contrast to Stalka, there was no evidence submitted at the summary judgment phase showing that plaintiff was singled out for such treatment.  Hence, the Court viewed the departure from the guideline as age-neutral.  Nonetheless, at trial, if plaintiff is able to lay a foundation showing that the interviewing policy existed,

and that he was singled out for a departure from that policy in connection with either of the two hiring decisions at issue, then he may introduce evidence that Nationwide departed from that policy in order to show pretext.

### D. Internal guideline regarding posted qualifications

At the summary judgment phase, plaintiff also maintained that Nationwide departed from another internal guideline when it considered qualifications that were not listed in the job postings.  The Court found that the job postings were "designed to state minimal requirements for the job, not to list every conceivable basis upon which one candidate might be preferred over another."  Opinion and order at 47.

The job qualifications for the Process Design Consultant position were listed as follows:

> 1. Six to eight years progressive work experience in insurance operations, including at least three years of major project leadership.
> 2. Undergraduate studies in insurance, business administration, management information or related field. MBA preferred.
> 3. Develops, manages and implements strategic business processes that support business requirements.
> 4. Negotiates and manages timelines and purpose of process design projects.
> 5. Identifies, develops and executes an ongoing communication process.
> 6. Interface with executives, customers and core business functions to establish strategy, design process and implementation solutions.
> 7. Identifies, negotiates and manages direct requirements for the detailed system design document (DSD) for policy management.
> 8. Creates process change by integrating new processes with existing ones, and communicating these changes to impacted business units.

9. Develops, leads and manages a measurement process for the implementation of client management, policy management, and process technology.
10. Develops, leads and implements strategic processes that support on time imperatives and cost benefit analysis.
11. Performs post implementation reviews to validate processing performance and conformance to requirements.
12. Performs other duties as assigned.

Hiring manager Carol Lamone initially stated that plaintiff was  not selected for this position

because "Hiring Manager hired a candidate with more experience in the billing arena, CPP,

Treasury, etc."  In her affidavit, Lamone explained:

> In my selection for the best-qualified applicant for this position, I was looking for a candidate with experience managing multi-functional projects, experience working in insurance operations, specifically billing and financial processes, experience working in Nationwide Insurance Service Centers, experience working on process innovation projects, communication skills commensurate with interfacing with mid-level to senior managers, and solid skills commensurate with interfacing with mid-level to senior managers, and solid team skills commensurate with managing direct reports.
>
> Based upon my review of the applicants' dossiers and my interviews of the individuals listed in paragraph no. 8 above, I concluded that Shawn M. Patterson was the best-qualified applicant for this position.
>
> Of sixty (60) possible total points, Mr. Patterson received a score of fifty-three (53), which was the second highest score.  . . .  The highest scoring candidate declined to pursue the position.  Mr. Patterson scored particularly well in the categories of Project Management, Insurance Operations, Service Center experience, Process Innovation, and Team Skills.  For example, Mr. Patterson led cash management systems projects as a Division Manager in Nationwide's Treasury Services, a major initiative to improve EFT usage, and lockbox initiatives, and he had been a Database Administrator of a bank reconciliation system.  Mr. Patterson also had systems experience in programming billing systems, and he had been a systems manager in Nationwide's Treasury Services.
>
> .              .              .              .              .
>
> I determined that Michael Legens was neither equally qualified nor better qualified for the position than Mr. Patterson because he had less experience in the six categories identified above in paragraph 10 than did Mr. Patterson and therefore, received a lower overall score than Mr. Patterson.

Lamone Aff. ¶¶ 10, 11, 12 and 14.  Thus, Lamone considered more detailed criteria in her

decision to select **Patterson.**

**The job qualifications for the Agency Support Director position were listed as follows:**

> Education: Undergraduate studies in insurance, business, finance, marketing, or related field. Technical designation such as CPCU, CLU, or equivalent insurance education preferred.
> Experience: Five to seven years experience in the insurance industry, including one to two years of strong project management experience.
> Knowledge: Proven knowledge of sales programs, policies, and processes pertaining to the management of an independent contractor agency distribution system.

**Hiring manager Brett Tupps explained, essentially, that he hired McPherson over plaintiff because Tupps' boss, Tom Starr, had recommended McPherson, and because he believed plaintiff was "curt, abrupt and/or abrasive."  Catching the eye of the hiring manager's boss is, of course, not listed in the job posting.  Neither is the ability to work one-on-one with Tupps.  Nor is "must not be curt, abrupt and/or abrasive."**

**It seems common sense that written job descriptions cannot reasonably be expected to contain, or anticipate, every factor a hiring manager might legitimately consider in determining which applicant is better qualified.**  The Court will exclude argument to the effect that consideration of a qualification not listed in the job posting gives rise to an inference of pretext.  The Court will not, however, preclude plaintiff from introducing the job postings and examining the hiring managers on the qualifications considered in making the hiring decisions, as this evidence may be admissible for other purposes, such as to show that plaintiff met or exceeded all of the qualifications listed in the job posting or that Patterson or McPherson did not.

### E.  Difference between first and later explanations for non-selection

In his memorandum in opposition to defendants' summary judgment motion, plaintiff also argued that the difference between the first explanation he received for his non-selection and the later more complete explanation was evidence of pretext.  The Court rejected plaintiff's argument, explaining:

> The difference in explanations for the employment decision stems from the fact that initially, the hiring manager was given the choice of selecting from among a limited number of reasons from a list provided by human resources.  The hiring manager would select the one that came closest to the actual reason.  It is no surprise that a more complete explanation of the reasons would differ from the "canned" reasons.

> . . . .

> The change of explanation argument is without merit.  The first explanation plaintiff received was selected from a limited menu of non-selection codes used by Nationwide.  That it differs from the ultimate explanation does not, in these circumstances, give rise to an inference of age discrimination.

> . . . .

> In addition, the Court has already determined that Nationwide's initial explanation for its employment decision differs from its ultimate explanation only because its initial explanation was selected from a limited list of reasons for employment decisions.  The circumstances plaintiff raises do not, in this case, give rise to an inference of pretext.

Opinion and Order at 39, 41, 47-48.

The reason Carol Lamone first gave for not hiring plaintiff for the was that she hired a candidate "with more experience in the billing arena, CPP, Treasury, etc."  The Court finds that her later explanation is not

inconsistent with her first explanation.

The reason Brett Tupps initially offered for not hiring plaintiff for the Agency Support Director was that plaintiff's "work experience/history [was] less than the other applicants."  As indicated above, Tupps' later explanation was that his boss, Tom Starr, had recommended McPherson, and that he believed plaintiff was "curt, abrupt and/or abrasive."  Notably, the first explanation in this instance was selected from a predetermined list of non-selection codes.  It is hardly surprising that Nationwide did not have codes for "hiring manager's boss has inside man for the position," or "candidate was curt, abrupt and/or abrasive."

It is easy to understand that differences between explanations given for employment decisions could give rise to an inference of untruthfulness, and therefore pretext.  Here, however, the reasons for the differences between explanations, to the extent any differences exist, are so obvious that no inference of untruthfulness arises.  For these reasons, plaintiff may not argue that the difference between explanations is evidence of pretext.  The Court will not, however, exclude the evidence because it may be admissible for other purposes, and the danger of the jury inferring pretext from the evidence in the absence of an argument to that effect is virtually nonexistent.

## II.  Motion to exclude opinion of plaintiff's economic damages expert

In their second motion *in limine,* defendants seek to exclude the testimony of plaintiff's expert on economic damages, David W. Boyd, Ph.D, relating to the Process Design Consultant position.  Defendants also move to exclude Dr. Boyd's expert report.

Nationwide eliminated the Process Design Consultant position in mid-2002.  In a letter dated April 30, 2002, Shawn Patterson was informed that the position would end.  Patterson was placed on sixty-day unassigned status, and was permitted to apply for other positions within Nationwide.  On June 21, 2002, hiring manager Linda Bonini selected Patterson for the Project Staff position, and approved a two-percent increase in Patterson's salary for the new position.  Patterson left the Process Design Consultant position on July 8, 2002.

In his initial report dated November 1, 2004, Dr. Boyd calculated plaintiff's damages with respect to the Process Design Consultant position by assuming that plaintiff would continue working in that position through his work life expectancy until May 11, 2013. The calculation included the two-percent salary

increase that Patterson received for the Project Staff position.

Defendants took Dr. Boyd's deposition on January 7, 2005. At his deposition, Dr. Boyd confirmed that he would use Patterson's new Project Staff position as a proxy to calculate plaintiff's damages provided that Patterson's position was terminated and he left it involuntarily. In his errata sheet, however, Dr. Boyd changed his answer and indicated that he would not use Patterson's new Project Staff position as a basis for calculating plaintiff's damages.

Also at his deposition, Dr. Boyd testified that if he had additional information concerning positions that were available at the time the Process Design Consultant position was eliminated, he would use that information in calculating plaintiff's damages. It appears, however, that Dr. Boyd was never provided such additional information.

On February 8, 2005, Dr. Boyd completed an updated expert report. As in the initial report, in the updated report, Dr. Boyd calculates plaintiff's damages with respect to the Process Design Consultant position by assuming that plaintiff would have worked in that position until the end of his work life expectancy. Hence, in both reports, Dr. Boyd assumes that plaintiff would continue to make the salary for the Process

Design Consultant position even after that position was eliminated.  In other words, Dr. Boyd assumes that plaintiff would have found a replacement position with the same salary as the Process Design Consultant position.  The updated report differs from the initial report, however, in that the updated report does not include the two-percent salary increase that Patterson received for the Project Staff position.  Plaintiff offered to make Dr. Boyd available to defendants for a supplemental deposition following the issuance of the updated report.  Defendants have, to date, declined plaintiff's offer.

Defendants argue that inconsistencies in the assumptions Dr. Boyd made in his calculations renders his opinion unreliable and therefore inadmissible under Fed. R. Civ. P. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Defendants also argue that Dr. Boyd's testimony and report must therefore be excluded under Fed. R. Civ. P. 37(c)(1) for violation of Fed. R. Civ. P. 26(a)(2)(B) and (C).  Defendants further assert that Dr. Boyd's report is inadmissible because it is both hearsay and redundant.

Plaintiff contends that any inconsistencies in Dr. Boyd's assumptions goes to the weight of his testimony, not its admissibility.  Plaintiff maintains that the inconsistencies can be

traced to the evolution of the evidence as discovery proceeded. Plaintiff concedes that there is no way of knowing whether plaintiff would have secured another position after the Process Design Consultant position was eliminated, but argues that any ambiguity must be resolved against Nationwide. Plaintiff further argues he did not violate Fed. R. Civ. P. 26(a)(2)(B) or (C), and that defendants have in any event not suffered any prejudice. Lastly, plaintiff asserts that Dr. Boyd's report may be used at trial as demonstrative evidence or to refresh Dr. Boyd's recollection without violating the hearsay rule.

### A. Daubert

Fed. R. Evid. 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 702 sets forth two basic requirements: (1) that the specialized or scientific testimony would be helpful to the jury; and (2) that the proposed witness is qualified to testify as an expert. The first requirement is a matter of relevancy; the second requirement goes to the issue of reliability. The Supreme Court has noted several factors to be considered in determining whether expert testimony is sufficiently reliable to warrant admission. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)(holding that the Frye "general acceptance" test was superseded by Fed. R. Evid. 702). The trial judge must act as a "gatekeeper" to ensure both

the relevance and reliability of all expert testimony or evidence.  Id. at 597.  In evaluating

reliability, the court should first consider whether the particular theory can or has been tested.

Id. at 593.  Second, the court should inquire whether the theory has been subjected to peer

review.  Id.  Third, the court should examine whether there is a known rate of error in the

theory's operation.  Id. at 594.  Lastly, the court may consider whether the theory is generally

accepted.  Id.  The application of these principles is flexible, and no single factor is

determinative.  See id.

Defendants argue that Dr. Boyd's reports and testimony are inconsistent and therefore

unreliable.  Plaintiff contends that any ambiguities in Dr. Boyd's testimony or reports is due to

the nature of the circumstances of this case, and do not indicate any flaw in Dr. Boyd's

methodology.

There is no indication that Dr. Boyd's calculations are themselves unreliable.

Furthermore, as plaintiff points out, there is no way of knowing whether plaintiff would have

secured a position after the Process Design Consultant position was eliminated.  Such

ambiguities, however, are to be resolved against the employer.  See Wooldridge v. Marlene

Indus. Corp., 875 F.2d 540, 549 (6th Cir. 1989); Rasimas v. Dept. of Mental Health, 714 F.2d

614, 628 (6th Cir. 1983).   The Court finds that Dr. Boyd's opinions are properly admissible

under Fed. R. Evid. 702 and Daubert.

### B.  Fed. R. Civ. P. 26(a)(2)(B) and (C)

Rule 26(a)(2)(B) requires a party to disclose the identity of

the party's expert and the expert's written report.  Rule

26(a)(2)(C) sets forth the deadline for disclosure: the deadline established by the court, or, in the absence of a court-imposed deadline, at least ninety days before the trial date. Fed. R. Civ. P. 26(a)(2)(C).

The thrust of defendants argument is that the inconsistencies and uncertainties inherent in Dr. Boyd's opinion, as disclosed, reduce it to something less than a disclosure of "a complete statement of all opinions expressed and the reasons therefore, [and] the data or other information considered by the witness in forming the opinions; . . ." Fed. R. Civ. P. 26(a)(2)(B). Plaintiff maintains that his expert disclosure has been more than ample.

Defendants have known Dr. Boyd's identity and methodology since November 2004. The various assumptions Dr. Boyd made during the course of discovery does not alter that fact. The Court finds that plaintiff fully complied with the requirements of Fed. R. Civ. P. 26(a)(2)(B) and (C).

Even if a violation occurred, defendants have not suffered any prejudice. It is clear from Dr. Boyd's updated report that he has calculated plaintiff's damages on the basis of the Process Design Consultant position for the remainder of plaintiff's work life expectancy even though Nationwide eliminated the position

in mid-2002.  Defendants are fully capable of pointing out any
weaknesses or inconsistencies in the assumptions Dr. Boyd
made in calculating damages both in cross-examination and
argument to the jury.

In sum, the Court finds that plaintiff did not violate  Fed. R.
Civ. P. 26(a)(2)(B) or (C).

### C.  Expert's report

Defendants contend that Dr. Boyd's report should be
excluded as hearsay.  Plaintiff argues that Dr. Boyd's report may
be used at trial as demonstrative evidence and to refresh Dr.
Boyd's recollection.

The Court finds that plaintiff may properly use Dr. Boyd's report in the manner
suggested.

### III.  Testimony of Shawn Patterson and Scott McPherson

Nationwide manager Carol Lamone hired thirty-eight-year-old Shawn Patterson instead
of plaintiff for the Process Design Consultant position.  Nationwide manager Brett Tupps hired
thirty-nine-year-old Scott J. McPherson instead of plaintiff for the Agency Support Director
position.  Defendants move under Fed. R. Civ. P. 37(c)(1) to preclude plaintiff from calling
Patterson or McPherson as witnesses at trial because plaintiff failed to identify them in discovery
as individuals with knowledge or information related to plaintiff's claims or as individuals

plaintiff anticipated calling as witnesses at trial as required by Fed. R. Civ. P. 26(e)(2).  In the alternative, defendants move under Rules 401, 402 and 403 of the Federal Rules of Evidence to preclude plaintiff from undertaking an in-depth cross-examination of Patterson and McPherson concerning their backgrounds and experience independent of what was actually considered by their respective hiring managers.

### A.  Fed. R. Civ. P. 26(e)(2)

 Rule 26(e)(2) provides in pertinent part:

> A party is under a duty seasonably to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 37(c)(1) provides, in part, "A party that without substantial justification fails to . . . amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial . . .  any witness or information not so disclosed."

The Sixth Circuit has found that, absent a showing of substantial justification or harmless violation, Rule 37 requires a court to impose a sanction for violation of Rule 26 disclosure requirements.  See Bowe v. Consol. Rail Corp., No. 99-4091, 2000 WL 1434584, at *2 (6th Cir. Sep. 19, 2000).  The non-disclosing party bears the burden of proving that a late disclosure was harmless.  Roberts ex rel. Johnson v. Galen of Virginia, Inc., 325 F.3d 776, 782 (6th Cir. 2002). The commentary to Rule 37(c)(1) strongly suggests that a "harmless" involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.  Roberts v. Galen of Va.,Inc., 325 F.3d 776, 783 (6th Cir. 2003).  Hence, an example of a harmless violation is the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a

potential witness known to all parties.  Id.  If a violation is found, the Court, in its discretion, may impose other appropriate sanctions in addition to or in lieu of exclusion of the evidence. Fed. R. Civ. P. 37(c)(1); Roberts, 325 F.3d at 784.

In the instant case, there is no indication that the violation was anything other than inadvertent.  The issue is therefore whether plaintiff has demonstrated that the late disclosure was harmless.

Plaintiff argues that defendants knew as early as November 6, 2003, the date plaintiff filed his memorandum in opposition to summary judgment, that plaintiff would be eliciting testimony from the two candidates who were favored over him.

Unlike the four witnesses plaintiff sought to exclude, Patterson and McPherson are centerpiece witnesses whose significance to the case cannot seriously have been in doubt, particularly after the Court issued its decision on defendants' summary judgment motion on June 14, 2004.  Moreover, these two individuals have always been, and remain, available to defendants, inasmuch as they are currently Nationwide employees.  The Court finds that the violation of Rule 26(e)(2) was harmless in this instance.

### B.  Fed. R. Evid. 401, 402 and 403

Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 402 provides that relevant evidence is generally admissible, whereas irrelevant evidence is inadmissible.  Rule 403 instructs that even relevant evidence "may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Plaintiff argues that the challenged evidence is relevant to the reasonableness of the hiring decisions.  "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981).  In determining pretext. tt is also proper to inquire "whether the employer made a *reasonably informed* and considered decision before taking an adverse employment action." Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir.1998)(emphasis added).  The Court finds that evidence of the backgrounds and experience of Patterson and McPherson are relevant under Rule 401.

Defendants maintain that introduction of detailed evidence on the backgrounds and experience would be unfairly prejudicial because it would invite the jury to act as a "pseudo-personnel department – weighing Patterson and McPherson's qualifications against plaintiff's qualifications to determine whom it would have selected for the positions."  The Court, however, will instruct the jury that it cannot substitute its judgment for that of Nationwide with respect to the hiring decisions, so the danger that the jury will be come a "pseudo-personnel department" is minuscule.  Aside from that, the Court is reluctant in this instance to make a final determination to exclude the evidence under Rule 403 before the trial.  See In re Paoli R. Yard P.C.B. Litigation, 916 F.2d 829, 859 (3d Cir. 1990).

In sum, the Court declines to preclude plaintiff from calling Patterson and McPherson as witnesses and examining them as to their backgrounds and experience.

## IV.  Plaintiff supplemental exhibit list

Lastly, defendants move to preclude plaintiff from introducing into evidence, referring to, or presenting at trial any exhibits listed in plaintiff's supplemental exhibit list filed on October 14, 2005, after the October 10, 2005 deadline.   Defendants offer two bases for exclusion: (1) the untimeliness of the filing; and (2) the exhibits contain evidence subject to exclusion on the other grounds defendants asserted in their first motion *in limine*.

Plaintiff acknowledges that he did not comply with the October 10, 2005 deadline set forth in the Court's order setting this matter for trial. Although the Court expects counsel to fully comply with its orders, the Court finds that in this instance the harsh sanction of exclusion is unwarranted considering that the list was still filed well before the trial date.  The Court finds that plaintiff's counsel has been diligent in other respects, and that it is sufficient to simply admonish counsel to more carefully adhere to the deadlines set by the Court.  For these reasons, the Court will not exclude the exhibits listed on plaintiff's supplemental exhibit list filed on October 14, 2005 on the basis of untimeliness.  Individual exhibits, or portions thereof, however, may be inadmissible pursuant to the Court's others rulings.


## V.  Disposition

For the above reasons, the Court holds as follows:

1.      Plaintiff may introduce evidence of his efforts to apply for the thirty-seven other positions at Nationwide after he was turned down for the  Agency Support Director and Process Design Consultant positions to demonstrate that he mitigated his damages; however, plaintiff is precluded from introducing such evidence to the extent that it includes references to any allegations of discrimination with respect to any of the thirty-seven positions.

2.      Plaintiff is precluded from presenting argument or evidence that an inference of age

discrimination arises from Nationwide's decisions to turn him down for any of the thirty-seven positions.

3.     Plaintiff shall refrain from arguing that Tupps' opinion that plaintiff was "curt, abrupt and/or abrasive" is direct evidence of age discrimination.  Nonetheless, the jury may consider the subjective nature of the Tupps' opinion in determining pretext.

4.     Plaintiff is precluded from introducing argument or evidence to the effect that Nationwide violated an internal policy when it hired candidates before plaintiff applied for the positions.

5.     If plaintiff is able to lay a foundation showing that Nationwide had a policy that all qualified candidates should be interviewed, and that he was singled out for a departure from that policy in connection with either of the two hiring decisions at issue, then he may introduce evidence that Nationwide departed from that policy in order to show pretext.  Otherwise, evidence and argument regarding the alleged policy is excluded.

6.     Plaintiff shall refrain from arguing that consideration of a qualifications not listed in the job posting gives rise to an inference of pretext.  The Court will not, however, preclude plaintiff from introducing the job postings and examining the hiring managers on the qualifications considered in making the hiring decisions, to the extent this evidence is admissible for other purposes, such as to show that plaintiff met or exceeded all of the qualifications listed in the job posting or that Patterson or McPherson did not.

7.     Plaintiff is precluded from arguing that any differences between the first explanations for his non-selection and later explanations are evidence of pretext.  The Court will not, however, exclude evidence of the explanations to the extent that it is admissible for other purposes.

8.     The Court will not exclude the opinion testimony of David W. Boyd, Ph.D, plaintiff's expert on economic damages, and plaintiff may use Dr. Boyd's report as demonstrative evidence and to refresh Dr. Boyd's recollection.

9.     The Court will permit plaintiff to call Shawn Patterson and Scott J. McPherson as witnesses and examine them concerning their backgrounds and job experience. Defendant, however, may object to specific questions at trial pursuant to Fed. R. Evid. 403.

10.     The Court will not exclude the exhibits listed on plaintiff's supplemental exhibit list filed on October 14, 2005 on the basis of untimeliness.  Individual exhibits, or portions thereof, however, may be inadmissible pursuant to the Court's others rulings.

**IT IS SO ORDERED.**

 /s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**